UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GOLDEN EAGLE DISTRIBUTING, CORPORATION, ) ) ) | |
| Plaintiff, ) | No. 15 C 8235 |
| ) | |
| v. ) | Chief Judge Rubén Castillo |
| ) | |
| WISE EQUIPMENT & RENTALS, INC., WISE EQUIPMENT RENTAL SERVICES LLC, and EDWARD J. ZAWILLA, ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Golden Eagle Distributing Corporation ("Plaintiff") moves for a turnover order directed at the assets of Edward J. Zawilla ("Defendant") in partial satisfaction of Plaintiff's judgment. (R. 73, Pl.'s Mot.) Specifically, Plaintiff seeks the turnover of a 1979 Pontiac Trans Am and a 1989 Pontiac Firebird owned by Defendant. (*Id.* at 2.) For the reasons stated below, the motion is granted.

## BACKGROUND

In December 2015, this Court entered a judgment in favor of Plaintiff and against Defendant in the amount of $643,942.16. (R. 19, Judgment.) In January 2016, Plaintiff served Defendant with a citation to discover assets pursuant to 735 ILL. COMP. STAT. 5/12-1402(a). (R. 20, Citation to Discover Assets.) In February 2016, Defendant filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Illinois, triggering an automatic stay. (R. 73, Pl.'s Mot. at 1.) Following the dismissal of Defendant's bankruptcy case in September 2016, the automatic stay was lifted, and Plaintiff resumed its collection proceedings. (*See* R. 73-1,

Bankruptcy Order at 2.) On November 2, 2016, this Court granted Plaintiff's first motion for entry of a turnover order as to certain of Defendant's property. (R. 58, Order.)

In April 2017, the parties agreed to the entry of an emergency order permitting Plaintiff to inspect Defendant's personal property that was being disposed of at an auction. (R. 72, Agreed Order at 2.) Following the auction, Plaintiff filed the present motion seeking the turnover of two of Defendant's vehicles: the Trans Am and the Firebird. (R. 73, Pl.'s Mot. at 2.)

Defendant filed a response in opposition to the motion. (R. 76, Def.'s Resp. at 5.) Defendant argues that ordering the turnover of the Trans Am would be improper for the following reasons: (1) the car constitutes a "domestic support obligation" under the terms of a marital settlement agreement ("MSA") entered in his divorce case, and such obligation "retains higher priority than the lien of plaintiff"; (2) turning over the vehicle would subject him to penalties of contempt for violating a post-decree order entered in the divorce case; and (3) his ex-wife's counsel was not given proper notice of the turnover request, as required by the post-decree order. (*Id.* at 2-3.) In connection with the Firebird, Defendant requests that he be granted $6,400 in exemptions: $4,000 under 735 ILL. COMP. STAT. 5/12-1001(b), also known as the "wildcard" exemption, and $2,400 under the motor-vehicle exemption contained in Section 5/12-1001(c). (*Id.* at 3.)

In reply, Plaintiff argues that this Court should grant its motion in its entirety because, in its view, "Defendant's objections" are "misplaced." (R. 77, Pl.'s Reply at 1.) With respect to the Trans Am, Plaintiff argues that (1) the car does not constitute a domestic support obligation; (2) Defendant would not be in danger of contempt for complying with this turnover because the post-decree order provides him the option to transfer the car; and (3) Plaintiff is not required to give Defendant's ex-wife's counsel notice of the turnover because "the ex-wife no longer has

2

any claim" to the car. (*Id.* at 3-5.) As to the Firebird, Plaintiff objects to Defendant's use of the wildcard exemption because Defendant already used this exemption in the November 2016 turnover proceeding.[1] (*Id.* at 7; *see also* R. 57, Order at 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 69 provides that the procedure for executing a judgment "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." FED. R. CIV. P. 69(a)(1). Thus, "unless there is an applicable federal statute expressly regulating the execution of judgments[,]" Rule 69 adopts the collection proceedings of the forum state. *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (citation omitted). Because there is no applicable federal statute, the Court looks to 735 ILL. COMP. STAT. 5/2-1402, which governs post-judgment supplementary proceedings in Illinois. *See id.* That statute provides:

> A judgment creditor . . . is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor . . . to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment.

735 ILL. COMP. STAT. 5/2-1402(a). A judgment creditor commences such proceedings by serving a citation to discover assets on either the debtor or a third party holding property of the debtor. *Id.* Upon service of the citation, a lien arises that "binds nonexempt personal property, including money, choses in action, and the effects of the judgment debtor[.]" 735 ILL. COMP. STAT. 5/2-1402(m).

The statute provides the Court with "broad powers to compel the application of discovered assets or income in order to satisfy a judgment." *GE Betz, Inc. v. Zee Co., Inc.*, 718

---

[1] Plaintiff does not raise any objection to Defendant's request for application of the $2,400 motor-vehicle exemption. (*See* R. 77, Pl.'s Reply.)

3

F.3d 615, 628 (7th Cir. 2013) (citation omitted). However, Section 5/2-1402 does not confer on the Court power to "compel the sale, delivery, surrender, assignment or conveyance of any property exempt by statute from the enforcement of a judgment[.]" 735 ILL. COMP. STAT. 5/2-1402(j). "The debtor bears the burden of demonstrating that property is exempt from being applied to satisfy a judgment." *Wells Fargo Bank Minn., NA v. Envirobusiness, Inc.*, 22 N.E.3d 125, 129 (Ill. App. Ct. 2014).

## ANALYSIS

### I. The Trans Am

Plaintiff first requests turnover of Defendant's Trans Am. (R. 73, Pl.'s Mot.) Defendant responds that turnover of the Trans Am would be improper because the car constitutes a "domestic support obligation" that is exempt from Plaintiff's lien. (R. 76, Def.'s Resp. at 2.) More specifically, Defendant argues that the car constitutes a domestic support obligation because the MSA entered in his divorce case requires him to transfer title of the Trans Am to his son when he turns 18.[2] (R. 76, Def.'s Resp. at 2.) Plaintiff counters that the vehicle does not constitute a support obligation under the MSA as that document was drafted. (R. 77, Pl.'s Reply at 3.)

As a preliminary matter, Defendant does not clearly identify what statute he believes applies to exempt this property. (*See* R. 76, Def.'s Resp. at 2-3.) To the extent he is relying on the Illinois personal property exemption statute to make this argument, there is no basis to conclude that the statute applies in this situation. The statute exempts "[t]he debtor's right to *receive* . . . alimony, support, or separate maintenance, to the extent reasonably necessary for

---

[2] Defendant does not provide his son's current age in his response, and the ages of his children were redacted on the MSA that was filed with the Court. (*See* R. 77-1, MSA at 11.) As best as can be discerned, Defendant's son is still a minor.

4

the support of the debtor and any dependent of the debtor." 735 ILL. COMP. STAT. 5/12-1001(g)(4) (emphasis added). But Defendant is not arguing that his right to *receive* the Trans Am as a domestic support obligation is exempt from judgment; rather, he is arguing that his duty to *convey* the Trans Am to his son renders the vehicle exempt. (R. 76, Def.'s Resp. at 2.) Such an argument finds no support in the plain text of the statute. *See In re Robinson*, 811 F.3d 267, 269 (7th Cir. 2010) (observing that if the language in a statute is clear, "the court must give it effect" (citation omitted)).

Assuming Defendant could overcome this hurdle, the Court nevertheless agrees with Plaintiff's interpretation of the MSA. Under Illinois law, "[a] marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement." *Blum v. Koster*, 919 N.E.2d 333, 340 (Ill. 2009). "Absent ambiguity, courts must interpret a contract by its clear language and not according to the parties' subjective interpretations." *In re Marriage of Chez*, 1 N.E.3d 1224, 1228 (Ill. App. Ct. 2013).

As is relevant here, Article 5 of the MSA provided that on the effective date of the agreement, Defendant "shall receive one hundred percent (100%)" of certain listed assets, including the Trans Am.[3] (R. 77-1, MSA at 23, 27.) The MSA specified that Defendant's ex-wife, Jill Zawilla ("Jill"), assigned the "certificate of title to and the un-expired term of insurance" of the Trans Am to Defendant, and that Defendant received the Trans Am "as his sole and separate property." (*Id.* at 27.) Nothing in Article 5 provided for continuing financial support for Defendant's ex-wife, and the MSA contains an entirely separate section governing

---

[3] Defendant's judgment for dissolution of marriage was entered on November 5, 2014, and it approved and incorporated the terms of the MSA. (R. 77-1, Judgment at 6.)

5

maintenance.[4] (*See id.* at 5, 14.) That section contains very specific provisions about the maintenance Defendant's ex-wife was to receive, and it does not mention the Trans Am. (*See id.* at 14-17.)

To the extent Defendant is attempting to characterize the Trans Am as a child support obligation that is beyond the reach of creditors, this argument fares no better. The MSA provided that "[a]nything herein to the contrary notwithstanding, [Defendant] shall assign to [his son], upon the child reaching the age of eighteen (18) years, the certificate of title to the 1979 Pontiac Trans Am. . . ." (*Id.* at 27.) However, this provision is contained in the section governing the division of property, and nowhere does the MSA suggest that the parties intended the Trans Am to provide ongoing support for Defendant's son.[5] (*See id.*) In fact, the MSA contains a separate section governing child support, and that section does not mention the Trans Am. (*Id.* at 17-23.) Although Defendant's son may have some future interest in the vehicle, the vehicle is presently Defendant's asset under the terms of the divorce decree. (*See* R. 77-1, MSA at 23, 27.) It is thus subject to being turned over in satisfaction of Plaintiff's judgment. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 626-27 (7th Cir. 2012) (concluding that district court did not exceed its authority under 735 ILL. COMP. STAT. 5/12-1402 by determining that trusts giving debtor's adult children a future interest as beneficiaries constituted an asset of the debtor that was subject to turnover). Accordingly, Defendant has failed to convince the Court that the Trans Am is a domestic support obligation that is exempt from Plaintiff's lien.

---

[4] Maintenance is an ongoing support payment made to one spouse, usually for a limited duration, depending on the needs of the parties and a variety of other factors. *See* 750 ILL. COMP. STAT. 5/504.

[5] Child support is an ongoing payment made for the "reasonable and necessary" support of a minor child until the age of 18, or until age 19 if the child is still attending high school, and is determined by the income of the parties and a variety of other factors. *See generally* 750 ILL. COMP. STAT. 5/505.

Defendant relatedly argues that requiring him to turn over the Trans Am would force him to violate a post-decree order entered in the divorce case and thereby subject him to a finding of contempt. (R. 76, Def.'s Resp. at 3.) Plaintiff, conversely, interprets the order as providing Defendant the option of transferring the Trans Am, and thus argues that the Court should grant the turnover. (R. 77, Pl.'s Reply at 5.) The post-decree order at issue was entered by agreement of Defendant and his ex-wife in September 2016 and stipulated as follows:

> 1. [Defendant], shall not transfer, sell, trade or otherwise dispose of the 1979 Pontiac Trans Am listed in the November 5, 2014 Judgment for Dissolution.
>
> 2. In the event that [Defendant] transfers or otherwise disposes of the vehicle to anyone other than the parties' son, John, he shall owe John the fair market value of the vehicle at the time of the transfer, as determined by an independent appraiser chosen by Jill's counsel. The time frame for payment to be determined by agreement or the Court, if necessary.

(R. 76-2, Agreed Order at 2.) It is worth noting that Defendant *agreed* to the entry of this order, and did so after judgment was entered in this case and the citation to discover assets served upon him. At that point, a lien was already in place over Defendant's property and he could not put an asset beyond the reach of a creditor through his own unilateral action. *See In re Kuzniewski*, 508 B.R. 678, 688 n.3 (N.D. Ill. 2014) (observing that once a citation to discover assets is properly served, a judgment creditor's interest in defendant's personal property is perfected). But in any event, the Court agrees with Plaintiff's reading of the order. The order, although somewhat awkwardly drafted, clearly contemplates a scenario in which Defendant transfers the vehicle to someone other than his son. The order ensures, in essence, that Defendant's son obtains *either* the vehicle or its fair market value. As long as Defendant complies with his obligation to provide his son with the fair market value of the vehicle, he would not be in contempt of the order. The Court therefore finds Defendant's argument unpersuasive.

Last, Defendant asserts that the Court should not grant the turnover because Plaintiff failed to give Defendant's ex-wife's counsel proper notice of the motion and an opportunity to conduct an appraisal of the vehicle. (R. 76, Def.'s Resp. at 2.) As a practical matter, the record shows that Defendant's ex-wife did in fact receive notice of the motion through her counsel of record. Plaintiff served Jill with a citation to discover assets in January 2016, and an attorney subsequently filed an appearance on her behalf. (R. 20, Citation; R. 40, Att'y Appearance.) Because the attorney's appearance remains active, he automatically received an electronic notice of Plaintiff's motion when the document was filed.[6] *See generally* N.D. ILL. L.R. 5.9 (providing that the notice of electronic filing generated through the court's electronic case filing system constitutes service on all filing users in a given case). To date, Jill has not objected or otherwise responded to the motion.

To the extent Defendant is claiming that more was required, the Court disagrees. As explained above, the MSA provided that upon entry of the divorce decree, the Trans Am became Defendant's "sole and separate property." (R. 77-1, MSA at 27.) Jill released any and all interest in this asset, (*id.* at 27, 33), and Defendant is listed as the sole owner of the vehicle on official Illinois Secretary of State records. (R. 73-3, Sec'y of State Records at 3.) Although the post-decree order provides a process for Defendant's ex-wife to determine the fair market value of the vehicle should Defendant transfer it to someone other than his son, the obligation to provide notice and an opportunity for an appraisal are Defendant's duties alone. Plaintiff is not a party to the MSA or the state court order. For these reasons, Defendant must turn over the Trans Am.

---

[6] The service list attached to Defendant's response brief reflects that Jill's counsel was served with a copy of this document as well. (*See* R. 75, Def.'s Resp. at 5.)

8

## II. The Firebird

Plaintiff also requests turnover of Defendant's Firebird. (R. 73 Pl.'s Mot. at 2.) Defendant does not attempt to prevent the turnover, but requests that this Court afford him $6,400 in exemptions—a $4,000 wildcard exemption and a $2,400 motor-vehicle exemption. (R. 76, Def.'s Resp. at 3.) Under Illinois law, a debtor has "the right to assert exemptions against certain income or assets . . . which may not be used to satisfy the judgment[.]" 735 ILL. COMP. STAT. 5/2-1402(b). As is relevant here, the Illinois personal property exemption statute exempts the following items from judgment:

> (a) The necessary wearing apparel, bible, school books, and family pictures of the debtor and the debtor's dependents;
> (b) *The debtor's equity interest, not to exceed $4,000 in value, in any other property*;
> (c) The debtor's interest, not to exceed $2,400 in value, in any one motor vehicle;
> (d) The debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor[.]

735 ILL. COMP. STAT. 5/12-1001 (emphasis added).

Defendant already used the wildcard exemption contained in subsection (b) last year in connection with the turnover of other property. (*See* R. 58, Order at 1.) However, he argues that his earlier use of the wildcard exemption was in a "wholly different and separate proceeding," and, in his view, the statute does not preclude a debtor from asserting the exemption more than once. (R. 76, Def.'s Resp. at 4.) The Court disagrees. Under the plain language of subsection (b), a debtor's exemption for "any other property" cannot exceed the statutory maximum of $4,000. 735 ILL. COMP. STAT. 5/12-1001(b); *see also Robinson*, 811 F.3d at 270 (observing that the legislature placed specific dollar-value limitations on all exemptions other than Section 5/12-1001(a)). If the Court adopted Defendant's interpretation, a debtor would be entitled to multiple wildcard exemptions totaling far in excess of the $4,000 statutory cap.

9

While the U.S. Court of Appeals for the Seventh Circuit has not explicitly addressed the issue of whether a debtor is permitted to use the wildcard exemption more than once, its decision in *In re Meyers*, 616 F.3d 626 (7th Cir. 2010), is instructive. In that case, the trustee of a bankruptcy estate filed a motion for turnover of $2,597.60 of the debtor's tax refunds. *Id.* at 627-28. The Seventh Circuit observed that when the motion was filed, the debtor "had $1,624 remaining in her 'wildcard' exemption." *Id.* at 628. This was the amount applied as a set off to the amount of the tax refunds recovered by the trustee. *Id.* Had the wildcard exemption applied separately to each individual turnover proceeding, as Defendant argues here, then the debtor would have been entitled to a $4,000 set off with respect to this property. But the Seventh Circuit clearly understood the wildcard exemption as providing a *total* exemption of $4,000. *See id.* This Court had the same understanding when it granted Plaintiff's prior request to apply the wildcard exemption, observing that "Defendant is entitled to *one such equity exemption*." (R. 58, Order at 1 (emphasis added).)

Nothing in Defendant's present filing convinces the Court to adopt a different rule. The Court is unconvinced by Defendant's citation to *Matter of Barker*, 768 F.2d 191 (7th Cir. 1985), which merely held that a debtor is entitled to "stack" various exemptions for the same piece of property, for example, a motor vehicle. *Id.* at 196. No one is disputing Defendant's ability to "stack" exemptions, and *Barker* did not in any way address whether a debtor is entitled to use the wildcard exemption in each separate enforcement proceeding, as Defendant argues here. The Court is also unpersuaded by Defendant's citation to an out-of-District case interpreting the

10

statute of another state.[7] (*See* R. 76, Def.'s Resp. at 4 (citing *Miller v. Barron*, 352 S.E.2d 41, 45 (W. Va. 1986)).)

Because this Court finds that the Illinois personal property exemption statute does not permit debtors to use the wildcard exemption more than once, Defendant cannot apply this exemption to the Firebird. However, the Court will grant Defendant's request to apply the motor-vehicle exemption contained in 735 ILL. COMP. STAT. 5/12-1001(c), as he has not previously used this exemption.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for turnover order (R. 73) is GRANTED. Defendant shall turn over the 1979 Pontiac Trans Am and 1989 Pontiac Firebird forthwith, subject to a $2,400 motor-vehicle exemption for the Firebird. Plaintiff shall prepare a proposed turnover order consistent with this order and submit it to the Court within seven days of this order.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October 12, 2017**

---

[7] It is worth noting that the West Virginia statute at issue in *Miller* was subsequently revised, and now contains a statutory cap similar to Illinois's. *See In re Watts*, No. 04-20915, 2006 WL 3899996, at *3-4 (Bankr. S.D.W. Va. Aug. 17, 2006).

11